### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT P. CHIGLINSKY, JR. | : | CIVIL NO.: 1:23-cv-01162 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

In this social security action, Plaintiff Vincent P. Chiglinsky, Jr. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1* to *12-7.*[2]  On May 5, 2021, Chiglinsky protectively filed[3] an application for disability insurance benefits and an application for supplemental security income, alleging that he has been disabled since March 5, 2021. *See Admin. Tr.* at 16.  After the Commissioner denied his claims at the initial and reconsideration levels of administrative review, *id*. at 203–18, 224–34, Chiglinsky requested an administrative hearing, *id.* at 235–36.  In May 2022, Chiglinsky, who was represented by counsel, as well as a vocational expert testified via telephone at a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). *Id*. at 66–97. In June 2022, the ALJ denied Chiglinsky's claims for benefits. *Id*. at 13–39. Chiglinsky appealed the ALJ's decision to the Appeals Council, which denied his

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Chiglinsky's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

request for review. *Id*. at 1–7.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In July 2023, Chiglinsky, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claims. *See Doc. 1*.  He requests that the court award him benefits or, in the alternative, remand the case for further proceedings. *Id*. at 2 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10*.  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 11, 12*.  The parties filed briefs, *see docs. 15, 17*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Chiglinsky is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]  Unlike

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Chiglinsky met the insured-status requirements through December 31, 2025. *Admin. Tr.* at 17, 19.

with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)

(quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On June 30, 2022, the ALJ denied Chiglinsky's claims for benefits. *Admin. Tr.* at 13–39.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Chiglinsky had not engaged in substantial gainful activity since his alleged onset date of March 5, 2021. *Id.* at 19.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Chiglinsky had the following severe impairments: osteoarthritis of the left knee and diabetes mellitus II with diabetic polyneuropathy. *Id.*  He also found Chiglinsky's "alleged Rheumatoid Arthritis and shoulder and ankle problems are non-medically determinable impairments as there are no diagnostic, clinical, or laboratory findings that would convert these alleged conditions into medically

determinable impairments." *Id*. at 22.[5]  The ALJ further concluded that although

Chiglinsky's Vitamin D and B12 deficiencies and his adjustment disorder were

medically determinable impairments, there were not severe. *Id*.  As to Chiglinsky's

adjustment disorder, the ALJ considered the four broad areas of mental functioning

set forth in the disability regulations for evaluating mental disorders[6] and in the

listings, known as the paragraph B criteria,[7] and he determined that Chiglinsky had

---

[5] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

[6] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. §§ 404.1520a, 416.920a.  As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 404.1520a(c)(3), 416.920a(c)(3).  A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at §§ 404.1520a(c)(4), 416.920a(c)(4).  The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at  §§ 404.1520a(d), 416.920a(d).

[7] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2.  Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F. R. §§ 404.1520a, 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F.  This is what the ALJ is referring to when he refers to the paragraph B criteria.

either no or only mild limitations in each area. *Id*. at 20–21.  The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." *Id*. at 22.  And he asserted that his RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id*.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Chiglinsky did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 22–24.  Specifically, that ALJ considered Listing 1.18 in relation to Chiglinsky's knee impairment and Listings 9.00 et seq. and 11.14, as well SSR 14-2p, with respect to Chiglinsky's diabetes with polyneuropathy. *Id*. at 23–24.

### D.  The RFC.

The ALJ then determined that Chiglinsky had the RFC to do light work[8] except that he "can never climb ladders, ropes, or scaffolds," he can only

---

[8] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing

"occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl,"
and he "can frequently be exposed to dusts, odors, fumes, pulmonary irritants, and
vibration." *Id.* at 24.

In making this RFC assessment, the ALJ summarized Chiglinsky's
assertions and testimony:

> [Chiglinsky] alleges that he has been unable to work since
> March 5, 2021, due to a combination of impairments, including
> Diabetes with Neuropathy, Arthritis of the Left Knee, and
> Depression.  He alleges that his Diabetic Neuropathy has
> caused nerve damage and constant pain as well as weakness in
> his legs, feet, arms, and hands, which has limited his ability to
> walk and drive as well as lift more than twenty pounds and
> reach.  He testified that medication side effects include
> sleepiness and trouble with memory.  He testified during the
> hearing that he does not drive and had not driven for six months
> prior to his hearing, explaining his primary care provider told
> him not to drive due to his medications.  He testified that his
> pain causes difficulty with sleeping more than three to four
> hours a night without waking up on average one time per night.
> He testified that he takes naps about twice a day for usually two
> hours and that he falls asleep during the day usually about one
> time due to medication side effects.  He testified that he has
> used a cane when he leaves home every day since June of 2021
> and reported in his Function Report that he has used a walker
> when he leaves the house to socialize.  He also testified that his
> doctor prescribed a powered wheelchair.  He testified during his

up to 10 pounds.  Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when it involves
sitting most of the time with some pushing and pulling of arm or leg controls.  To
be considered capable of performing a full or wide range of light work, you must
have the ability to do substantially all of these activities.  If someone can do light
work, we determine that he or she can also do sedentary work, unless there are
additional limiting factors such as loss of fine dexterity or inability to sit for long
periods of time.").

hearing that he shops in stores with help from a friend or his sister and that he uses a motorized cart.  He reported that his combined impairments have caused difficulty with lifting more than twenty pounds, sitting, standing, walking, squatting, bending, kneeling, climbing stairs, reaching, using his hands to hold onto objects, remembering, and concentrating.

*Id*. at 25.

The ALJ also considered Chiglinsky's Function Report noting that Chiglinsky "did not indicate that his impairments have caused difficulty with using his hands, climbing stairs, completing tasks, paying attention, finishing what he starts, understanding, following instructions, getting along with others, or handling stress or changes in routine." *Id*. at 27.  Chiglinsky "also indicated that he follows both written and spoken instructions 'rather well,' finishes what he starts, gets along 'very well' with authority figures, has never been fired or laid off due to problems getting along with others, and handles stress and changes in routine 'rather well' and 'good,' respectively." *Id*.  And the ALJ noted that in his Function Report, Chiglinsky "indicated that he drives and is able to go out unaccompanied." *Id*.

The ALJ further considered Chiglinsky's daily activities noting that Chiglinsky reported "taking care of his personal needs albeit with some difficulty[.]" *Id*.  Chiglinsky also reported "preparing simple meals, mowing his lawn, doing his laundry, performing basic household chores, shopping in stores, managing his finances, engaging in unnamed hobbies, socializing with others in

person and over the phone, reading on a daily basis, and using a smartphone to use the internet, pay bills, and shop online." *Id*.

The ALJ concluded that although Chiglinsky's impairments "could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 25–26.

In making the RFC assessment, the ALJ also reviewed Chiglinsky's medical records and treatment notes, noting that Chiglinsky "presented to various providers with complaints of and for treatment for Osteoarthritis of the Left Knee and Diabetes Mellitus II with Diabetic Polyneuropathy, for which he was prescribed Gabapentin and Cymbalta." *Id*. at 26.  The ALJ acknowledged that Chiglinsky presented with complaints "of lower extremity pain and weakness," and that "some physical examinations performed during the relevant time period revealed [Chiglinsky] had the inability to walk on his heels and toes with poor effort[.]" *Id*. But, he noted, other examinations showed that Chiglinsky

> had a normal gait, normal 5/5 muscle strength in the bilateral upper and lower extremities, normal reflexes, intact sensation, no edema, a full squat, the ability to transfer positions without difficulty or help, intact hand and finger dexterity, full grip strength bilaterally, normal range of motion throughout his entire musculoskeletal system, and normal muscle coordination as well as no focal or sensory-motor deficits.

*Id*.  The ALJ also noted that Chiglinsky "reported having 70% improvement in his pain with the use of Gabapentin and Cymbalta," and his pain management provider reported that he had "'significant improvement in his residual pain of his bilateral lower extremities.'" *Id*.  And although Chiglinsky "presented to the emergency room with complaints of left-sided numbness in May of 2021, and was diagnosed with an episode of Hyperglycemia, he left against medical advice." *Id*.  The ALJ further documented that "ABI testing of [Chiglinsky's] bilateral lower extremities was within normal limits[,]" and "[a]n x-ray of his left knee revealed only mild degenerative joint disease during his physical consultative examination." *Id*.

Although Chiglinsky alleged "that he has used a cane and walker and was suggested to use a power wheelchair," the ALJ "did not find evidence in the record of any medical necessity for any assistive device, with there notably being no opinion of record that [Chiglinsky] would require an assistive device." *Id*. at 26. Based on "a complete lack of neurological deficits for [Chiglinsky's] upper and lower extremities during the physical examinations" and "the opinions rendered by the physical consultative examiner and State agency medical consultants, which do not provide for any manipulative limitations for [Chiglinsky's] upper or lower extremities," the ALJ further concluded "that no manipulative limitations for [Chiglinsky's] upper or lower extremities are warranted." *Id*.  Further, noting that Chiglinsky "did not present during the relevant time period on any routine basis

14

with complaints of fatigue or medication side effects," the ALJ found no mental limitations in the RFC were warranted "particularly given his normal mental status examination findings of record during the relevant time period, including an intact memory, intact and normal judgment, normal insight, normal attention and concentration, normal behavior, normal thought content, and a normal mood and affect, appropriate eye contact, and an alert and oriented sensorium." *Id*.

The ALJ also considered the medical opinion evidence and prior administrative medical findings in the record. *Id*. at 28–30.  The ALJ first considered the opinion evidence as to Chiglinsky's physical impairments.  He found the opinions of consultative examiner Dr. Partick Frisella and state agency medical consultant Dr. Hong Sik Park, who both concluded that Chiglinsky could perform medium work with some limitations, to be "generally not persuasive." *Id*. at 28.  According to the ALJ, "the evidence received at the hearing level, including the opinion of the State agency medical consultant on reconsideration, support the reduction to light exertion work with the noted postural and environmental limitations." *Id*.  But the ALJ agreed with and found persuasive the portions of Dr. Frisella and Dr. Park's opinion that Chiglinsky "does not require an assistive device and does not have any upper or lower extremity manipulative limitations." *Id*.

15

The ALJ found persuasive the opinion of state agency medical consultant Dr. Gene Whang, who opined that Chiglinsky can perform light work with some postural limitations but that he does not have any manipulative limitations. *Id*.  The ALJ concluded that Dr. Whang's opinion was "supported by the findings noted by Dr. Whang in his assessment, including a lack of neurological deficits during the relevant time period as well as [Chiglinsky's] reports of improvement with medication." *Id*.  He also concluded that Dr. Whang's opinion was "consistent with the less restrictive opinions rendered by the physical consultative examiner and the opinion of the State agency medical consultant at the initial level." *Id*.

The ALJ then turned to the physical residual capacity assessment by Chiglinsky's primary care provider Dr. Elizabeth Klucka. *Id*.[9]  The ALJ recounted that Dr. Klucka opined that Chiglinsky

> would frequently have symptoms that would interfere with his concentration and attention required to perform simple work-related tasks, would need to recline or lie[] down during an eight-hour work day in excess of typical breaks, would be limited to sitting four hours and standing or walking two hours during an eight-hour work day, would need to take breaks on an hourly basis for twenty minutes at a time, would be limited to sedentary work, would be able to use his fingers only 25% of the time for fine manipulation, would be absent from work once

---

[9] The ALJ in his decision as well as Chiglinsky's counsel in his brief spells this doctor's last name as "Kalucka."  But the underlying medical records indicate that this doctor's name is Klucka. *See, e.g.*, *Admin. Tr.* at 1360, 1365.  We use the proper spelling here and in subsequent quotes from the ALJ's decision and from Chiglinsky's brief.

> or twice a month, and would have "significant limitation in
> walking and attention due to fatigue and neuropathy."

*Id*. at 28–29.  The ALJ found Dr. Klucka's opinion "not persuasive because it is

not supported by the physical or mental status examination findings noted by Dr.

Klucka during [Chiglinsky's] appointments of record or those noted by

[Chiglinsky's] pain management provider, all of which do not reflect any

neurological deficits." *Id*. at 29.  He also concluded that the opinion "is not

consistent with the opinions provided by the physical consultative examiner or

State agency medical consultants, who opined [Chiglinsky] does not have any

manipulative limitations." *Id*.  And "regarding the portion of this opinion that

[Chiglinsky's] symptoms would frequently interfere with his concentration and

attention required to perform simple work-related tasks," the ALJ reasoned that

"this is not consistent with the opinion rendered by Dr. Klucka in the mental

medical source statement in which she opined [Chiglinsky] had at most slight

work-related mental limitations." *Id*.  Further, that ALJ stated that "it is not

supported by the consistently normal mental status examination findings of record

during the relevant time period." *Id*.

The ALJ then turned to the opinion evidence regarding Chiglinsky's mental

impairments.  Dr. Andrew Cole, a mental consultative examiner, opined that

Chiglinsky "had no limitation for simple instructions or simple decisions, a mild

limitation for complex instructions and complex decisions, no social interaction

limitations, and a mild limitation for responding appropriately to usual work situations and to changes in a routine work setting." *Id.*  The ALJ found Dr. Cole's opinion persuasive. *Id.*  He explained that the opinion "is supported by the mental status examination findings noted by Dr. Cole in his opinion and during his consultative examination, which do not reveal any mental status abnormalities." *Id.* He also concluded that the opinion "is consistent with the other mental status examinations of record, which also do not reveal any abnormalities." *Id.*  And, he asserted, Dr. Cole's opinion "is also consistent with the opinions provided by [Chiglinsky's] treating primary care provider, Dr. Klucka, and the opinions of the State agency psychological consultants, as discussed below in greater detail." *Id.* The ALJ asserted that although he "has accommodated" Dr. Cole's "opinion in the above "paragraph B" findings," he found "that given these opinions and the normal mental status examination findings of record, no mental limitations are warranted for inclusion in the" RFC "even when considering [Chiglinsky's] alleged fatigue and medication side effects, as [Chiglinsky] did not present on any routine basis with any such complaints during the relevant time period." *Id.*

The ALJ next considered the opinions of state agency psychological consultants Dr. Melissa Franks, who found that Chiglinsky has a mild limitation in concentrating, persisting, or maintain pace and no limitation on the other paragraph B mental functional areas, and Dr. Valorie Rings, who found that Chiglinsky had a

mild limitation in adapting and managing oneself as well as a mild limitation in concentrating, persisting, or maintain pace. *Id*. at 29–30.  The ALJ reasoned that these opinions "are supported by the mental status examination findings noted by these State agency psychological consultants in their opinions, including the normal mental status examination findings of record throughout the relevant time period." *Id*. at 30.  He also asserted that the opinion of Dr. Franks and Dr. Rings are "consistent with the opinions provided by [Chiglinsky's] treating primary care provider, Dr. Klucka, and the opinion provided by mental consultative examiner, Dr. Cole[.]" *Id*.  As he did in connection with Dr. Cole's opinion, that ALJ noted that although he accommodated the opinions in his "paragraph B" findings, he concluded that no mental limitations in the RFC were warranted.

The ALJ then analyzed the opinion provided by Dr. Klucka in a Mental Impairment Questionnaire. *Id*. at 30.  The ALJ characterized Dr. Klucka's opinion as that Chiglinsky "had mainly no work-related mental limitations, with the exception of slight limitation in some categories." *Id*. at 30.[10]  The ALJ found that "this opinion is persuasive because it was rendered by [Chiglinsky's] treating

---

[10] As discussed below, Chiglinsky contends that the ALJ mischaracterized Dr. Klucka's opinion in this regard.  Here, we are merely summarizing the ALJ's decision.  We provide a more detailed summary of Dr. Kalucka's responses to the Mental Impairment Questionnaire and we address Chiglinsky's argument that the ALJ mischaracterized those responses later in the Discussion section of this Memorandum Opinion.

provider who had the ability to continually monitor [Chiglinsky's] mental status and who supported her decision with the largely normal mental status examination findings during [Chiglinsky's] appointments" *Id.* "Moreover," according to the ALJ, "this opinion is consistent with the opinions provided by the State agency psychological consultants, who opined [Chiglinsky] had no greater than a mild limitation in any of the 'paragraph B' criteria [and] no corresponding mental limitations for any work-related activities." *Id*.

Finally, the ALJ determined that Dr. Klucka's opinions that Chiglinsky was disabled, could not return to work, and would be incapacitated for specific periods were not persuasive "because they address an issue that is reserved to the Commissioner," they "do not contain any functional analysis," and they "are not supported by or consistent with the previously discussed objective medical evidence, including the physical examination findings, which lack neurological deficits, as well as a lack of abnormal diagnostic findings during the relevant time period." *Id*.

The ALJ concluded that "after considering the record as a whole, including the objective diagnostic tests and clinical findings on physical and mental examinations, [Chiglinsky's] longitudinal treatment history, the medical opinions, and his documented activities of daily living," he finds that Chiglinsky has the RFC to perform light work with some limitations. *Id*. at 30–31.

20

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Chiglinsky could not perform his past relevant work as a truck driver, shredder, front-end-loader operator, forklift operator, or groundskeeper. *Id.* at 31.

### F.  Step Five.

At step five of the sequential-evaluation process, considering Chiglinsky's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as garment folder, routing clerk, and small products assembler—that exist in significant numbers in the national economy that Chiglinsky could perform. *Id.* at 32.

In sum, the ALJ concluded that Chiglinsky was not disabled from March 5, 2021 (which is the alleged onset date), through the date of his decision on June 30, 2022. *Id.* at 33.  Thus, he denied Chiglinsky's claims for benefits. *Id.*

## V.  Discussion.

Chiglinsky claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ's evaluation of the opinion evidence was "fatally flawed," the ALJ failed to "meet the articulation requirements of the regulations," and the ALJ's analysis "frustrated meaningful review." *Doc. 15* at 4, 5.  More specifically, Chiglinsky asserts that the ALJ mischaracterized Dr.

Klucka's opinion from the Mental Impairment Questionnaire and the ALJ used that

mischaracterization to conclude the Dr. Klucka's opinion regarding Chiglinsky's

physical impairments was not persuasive. *Id.* at 10–11.  Chiglinsky also asserts that

the ALJ failed to explain how he considered other "highly probative evidence in

assessing the persuasiveness of Dr. Klucka's opinion[.]" *Id.* at 11–13.

For the reasons discussed below, because the ALJ mischaracterized Dr.

Klucka's opinion, we cannot conclude that the ALJ's decision was supported by

substantial evidence.  The ALJ's decision, therefore, will be vacated and the case

remanded to the Commissioner for further proceedings.

### A.  The ALJ mischaracterized Dr. Klucka's opinion.

Chiglinsky asserts that the ALJ's RFC determination is not supported by

substantial evidence because the ALJ's evaluation of Dr. Klucka's opinion was

fatally flawed in that that ALJ mischaracterized Dr. Klucka's opinion.  Before

addressing Chiglinsky's specific arguments, we set forth the standards regarding

the RFC assessment in general.

"The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is

"'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

In setting the RFC, the ALJ must also clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient

23

development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  Thus, an "ALJ is free to accept or reject evidence, but not to mischaracterize it." *Malone v. Barnhart*, No. CIV A 05-2991, 2008 WL 4155707, at *4 (E.D. Pa. Aug. 14, 2008); *see also Platt v. O'Malley*, No. CV 23-1104, 2024 WL 3401329, at *4 (W.D. Pa. July 12, 2024) ("Additionally, ALJs may not mischaracterize or overlook evidence."); *Gleason v. Saul*, No. 19-CV-03713-RAL, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision."); *Miller v.*

*Colvin*, No. 3:13-CV-02594-GBC, 2015 WL 1609671, at *8 (M.D. Pa. Apr. 10, 2015) (stating that an "ALJ may not misconstrue evidence in rejecting a treating opinion").

Applying the above standards to the present record, we conclude that the ALJ's decision is not supported by substantial evidence because the ALJ mischaracterized Dr. Klucka's opinion from the Mental Impairment Questionnaire and the ALJ used that mischaracterization to conclude the Dr. Klucka's opinion regarding Chiglinsky's physical impairments was not persuasive.  To understand why we conclude that the ALJ mischaracterized Dr. Klucka's opinion in the Mental Impairment Questionnaire, we first set forth in some detail, Dr. Klucka's opinions.  Dr. Klucka submitted both a Physical Assessment, *see Admin. Tr.* at 1359–60, as well as a Mental Impairment Questionnaire, *see Admin. Tr.* 1363–66. We first summarize her Physical Assessment, and then we summarize her Mental Impairment Questionnaire.

In her Physical Assessment of Chiglinsky, Dr. Klucka listed Chiglinsky's diagnosis as diabetes with hyperglycemia, polyneuropathy, and unintentional weight loss. *Id*. at 1359.  Dr. Klucka opined that Chiglinsky's symptoms associated with his impairments would frequently be severe enough to interfere with the attention and concentration required to perform simple work-related tasks. *Id*.  And she listed that Chiglinsky suffered drowsiness from gabapentin. *Id*.  She also

25

opined that Chiglinsky would need to recline or lie down during an eight-hour

workday in excess of the typical 15-minute morning break, 30-60 minute lunch

break, and typical 15-minute afternoon break. *Id*.  She also concluded that he could

walk less than a block without rest or significant pain, he could sit four hours and

stand/walk two hours during an eight-hour workday, and he would need to take

unscheduled 20 minutes breaks hourly. *Id*.  She further concluded that he could lift

or carry less than 10 pounds frequently, ten pounds occasionally, but never twenty

pounds or more. *Id*.  She also opined that Chiglinsky had limitations in doing

repetitive reaching, handling, and fingering, and he could use his fingers for fine

manipulation only 25% of an eight-hour workday. *Id*.  She asserted that based on

her experience with Chiglinsky and the objective medical, clinical, and laboratory

findings, Chiglinsky would likely be absent from work once or twice a month

because of his impairments or treatments. *Id*. at 1360.  Dr. Klucka checked "no" in

response to the question: "Are your patient's impairments (physical impairments

plus any emotional impairments) reasonably consistent with the symptoms and

functional limitations described in this evaluation?" *Id*.  But in the line asking for

an explanation, she wrote "significant limitation in walking and attention due to

fatigue & neuropathy." *Id*.

 Dr. Klucka also submitted a Mental Impairment Questionnaire, which asked

her to rate Chiglinsky's degree of limitation "resulting from PSYCHOLOGICAL

FACTORS only." *Id.* at 1363 (capitalization in original).  In this Mental

Impairment Questionnaire, Dr. Klucka opined that Chiglinsky had no limitations

under the categories labeled "Social Interaction" and "Adaptation," and none,

slight, and moderate limitations under the category labeled "Understanding &

Memory." *Id.* at 1363–65.  Most relevant to the instant case is the category labeled

on the Mental Impairment Questionnaire "Sustained Concentration & Persistence,"

which asked for Dr. Klucka's opinion as to Chiglinsky degree of limitation in 11

areas. *Id.* at 1363–64.  Dr. Klucka opined that Chiglinsky had no limitations in the

ability to carry out very short and simple instructions and in the ability to make

simple work-related decisions. *Id.*  She opined that that Chiglinsky had slight

limitations in the ability to carry out detailed instructions, in the ability to sustain

an ordinary routine without special supervision, in the ability to work in

coordination with or in proximity to others without being distracted by them, in the

ability to complete a normal workday without interruptions from psychologically

based symptoms, in the ability to completed a normal workweek without

interruptions from psychologically based symptoms, and in the ability to perform

at a consistent pace with a standard number and length of rest periods. *Id.*  Dr.

Klucka further opined that Chiglinsky had moderate limitations in the ability to

perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerance. *Id.* at 1363.  And she opined that Chiglinsky had

marked limitations in the ability to maintain attention and concentration for extended periods. *Id*.  She also asserted that in her professional opinion, Chiglinsky would likely be absent once in an average month. *Id*.  And she listed the basis for her opinions under the category "Sustained Concentration & Persistence" as Chiglinsky's "mild depression." *Id*. at 1364.

As we noted above when summarizing the ALJ's decision, the ALJ found Dr. Klucka's opinion in her Physical Assessment "that [Chiglinsky's] symptoms would frequently interfere with his concentration and attention required to perform simple work-related tasks" not persuasive, and the ALJ reasoned that "this is not consistent with the opinion rendered by Dr. Klucka in the mental medical source statement in which she opined [Chiglinsky] had at most slight work-related mental limitations." *Admin. Tr*. at 29.  But the ALJ's conclusion that there was an inconsistency between Dr. Klucka's opinions was based on a mischaracterization of Dr. Klucka's opinion in the Mental Impairment Questionnaire.  As set forth above, in the Mental Impairment Questionnaire, Dr. Klucka opined that Chiglinsky had moderate limitations in several areas including in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. *Id*. at 1363.  Moreover, she opined that Chiglinsky had marked limitations in the ability to maintain attention and concentration for extended periods. *Id*.  Thus, by stating that Dr. Klucka found that Chiglinsky "had

at most slight work-related mental limitations" *id*. at 29, the ALJ mischaracterized the record.  And the ALJ again mischaracterized the record when stating that Dr. Klucka opined that Chiglinsky "had mainly no work-related mental limitations, with the exception of slight limitation in some categories," *id*. at 30, in connection with finding Dr. Klucka' opinion in the Mental Impairment Questionnaire persuasive.

Given that the ALJ used his mischaracterization of Dr. Klucka's opinion in the Mental Impairment Questionnaire to find Dr. Klucka's opinion in the Physical Assessment inconsistent and therefore, not persuasive, the ALJ's decision is not supported by substantial evidence.

The Commissioner argues otherwise.  Without conceding that the ALJ mischaracterized Dr. Klucka's opinion in the Mental Impairment Questionnaire, the Commissioner offers only a tepid defense of the ALJ's characterization asserting that when viewing the Mental Impairment Questionnaire as a whole, "Dr. Klucka opined to no more than slight limitation in nearly all areas of functioning." *Doc. 17* at 18.  But nearly all is not the same as all.  And the ALJ ignored or mischaracterized Dr. Klucka's opinion by not acknowledging that she opined that in several areas, Chiglinsky had moderate limitations, and importantly, she opined that he had marked limitations in the ability to maintain attention and concentration for extended periods.

The Commissioner also contends that Dr. Klucka's opinion (in the Mental Impairment Questionnaire) that Chiglinsky "could complete a normal workday with a standard number and length of rest periods is also inconsistent with her physical medical source statement indicating [Chiglinsky] would need hourly breaks lasting 20 minutes and need to lie down in excess of typical work breaks." *Doc. 17* at 18. First, there is not necessarily an inconsistency since the Mental Impairment Questionnaire asked Dr. Klucka to rate Chiglinsky's degree of limitation "resulting from PSYCHOLOGICAL FACTORS only," *Admin. Tr.* at 1363, whereas her Physical Assessment was based on Chiglinsky's physical impairments and included his drowsiness from medication, *id.* at 1359. Moreover, the ALJ did not cite that purported inconsistency as a basis for finding Dr. Klucka's opinion regarding Chiglinsky's physical limitations unpersuasive. And the Court is limited to reviewing "the ALJ's stated analysis." *Karstetter v. Kijakazi*, No. 1:20-CV-01603, 2022 WL 16855565, at *8 (M.D. Pa. Nov. 10, 2022). We may not "evaluate the ALJ's administrative decision on any grounds other than those the ALJ actually relied upon in making his decision." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *6 n.13 (M.D. Pa. Mar. 14, 2014). Thus, the Commissioner in his brief "cannot do what the ALJ should have done," and the Commissioner's "*post hoc* rationalization cannot provide

substantial evidence for [the] determination[.]" *Fox v. Kijakazi*, No. 3:18-CV-1486, 2021 WL 5441509, at *4 (M.D. Pa. Nov. 19, 2021).

The Commissioner also emphasizes that the ALJ found Dr. Klucka's opinion unpersuasive for additional reasons other than the purported inconsistency addressed above. True. But still the ALJ mischaracterized Dr. Klucka's opinion on material issues. And we cannot say that such mischaracterization did not color his reasoning as a whole. In fact, the ALJ used his mischaracterization to purportedly find Dr. Klucka's opinion in the Mental Impairment Questionnaire persuasive. Further, he then used Dr. Klucka's mental opinion, which (as mischaracterized) he found persuasive, in finding the opinions of Drs. Cole, Franks, and Rings persuasive. *See id*. at 29 (concluding that Dr. Cole's opinion was consistent with Dr. Klucka's opinion); *id*. at 30 (concluding that Dr. Franks and Dr. Rings's opinion was consistent with Dr. Klucka's opinion).

Nor can we say that the ALJ's mischaracterization of Dr. Klucka's opinion was harmless error. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)). "An error is 'harmless' when, despite the technical correctness of an appellant's legal

contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

Here, as noted above, in addition to affecting how he viewed Dr. Klucka's opinions, the ALJ's mischaracterization also impacted his discussion of Drs. Cole, Franks, and Rings's opinions.  And if the ALJ had properly characterized Dr. Klucka's opinion, he may have found that Chiglinsky had greater limitations than he did.  Further, as Chiglinsky points out, if the ALJ had found Dr. Klucka's opinion (physical) persuasive, based on the vocational expert's testimony, a finding of disability would have followed.  Thus, we cannot say that the ALJ's mischaracterization of the record was harmless error.

### B.  Other Claims.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's mischaracterization of the record, we will not address Chiglinsky's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id*.

## C.  Remand is the appropriate remedy.

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Chiglinsky.  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz*

33

*v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Chiglinsky's claims, and we cannot say that substantial evidence on the record as a whole shows that Chiglinsky is disabled and entitled to benefits.  Thus, we will remand the case to the Commissioner for further proceedings.


## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge